**CT Corporation**

**Service of Process Transmittal**
08/12/2009
CT Log Number 515273455

| | |
|---|---|
| **TO:** | Robert Preston Brown, Vice President, Litigation<br>Shaw Group Inc.<br>4171 Essen Lane<br>Baton Rouge, LA 70809 |
| **RE:** | **Process Served in Louisiana** |
| **FOR:** | Shaw Environmental, Inc. (Domestic State: LA) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Robin Fennidy, et al., Pltfs. vs. American International Group, Inc., et al. including Shaw Environmental, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Citation, Petition |
| **COURT/AGENCY:** | Orleans Civil District Court, Parish of Orleans, LA<br>Case # 09-7980 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - Personal Injury - Exposure to formaldehyde emissions in temporary housing unit |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 08/12/2009 at 08:30 |
| **APPEARANCE OR ANSWER DUE:** | Within 15 days |
| **ATTORNEY(S) / SENDER(S):** | Justin I. Woods<br>2800 Energy Centre<br>1100 Poydras Street<br>New Orleans, LA 70163<br>504-522-2304 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex 2 Day, 798111089816<br>Image SOP<br>Email Notification, Randy Gregory randall.gregory@shawgrp.com<br>Email Notification, Robert Preston Brown robert.p.brown@shawgrp.com<br>Email Notification, Clifton Rankin Cliff.Rankin@Shawgrp.com<br>Email Notification, Grace Frantz grace.frantz@shawgrp.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Lisa Uttech<br>5615 Corporate Blvd<br>Suite 400B<br>Baton Rouge, LA 70808<br>225-922-4490 |

Page 1 of 1 / LU

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

EXHIBIT "1"

ATTORNEY'S NAME: Woods, Justin 24713  
AND ADDRESS: 1100 poydras street,  
new orleans   LA 70163

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS  
STATE OF LOUISIANA

NO:   2009 -- 07980   1   SECTION:   7 -- E

FENNIDY, ROBIN   ETAL versus AMERICAN INTERNATIONAL GROUP, INC.   ETAL

# CITATION

TO: SHAW ENVIRONMENTAL, INC.

THROUGH: THEIR AGENT: CT CORPORATION  
5615 CORPORATE BLVD., STE.400B

BATON ROUGE                LA

YOU HAVE BEEN SUED:

You must either comply with the demand contained in the petition  
**PETITION FOR DAMAGES**

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the service hereof under penalty of default

***

ADDITIONAL INFORMATION

Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer Referral Service at 561-8828. This Referral Service operates in conjunction with the New Orleans Bar Association. If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp.; you may call 529-1000 for more information.

COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE

***

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for the Parish of Orleans, State of LA   August 3, 2009   .

Clerk's Office, Room 402, Civil Courts Building,  
421 Loyola Avenue  
New Orleans, LA

DALE N. ATKINS, Clerk of  
The Civil District Court  
for the Parish of Orleans  
State of LA  
by _____  
Deputy Clerk

---

SHERIFF'S RETURN  
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ _____ served a copy of the w/i petition **PETITION FOR DAMAGES** | On this _____ day of _____ _____ served a copy of the w/i petition **PETITION FOR DAMAGES** |
| On SHAW ENVIRONMENTAL, INC. | On SHAW ENVIRONMENTAL, INC. |
| THROUGH: THEIR AGENT: CT CORPORATION | THROUGH: THEIR AGENT: CT CORPORATION |
| | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ |
| Returned same day | a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating HIM / HER the said _____ |
| No. _____ | SHAW ENVIRONMENTAL, INC. |
| Deputy Sheriff of _____ | |
| Mileage: $ _____ | |
| _____/ ENTERED /_____ PAPER           RETURN _____/_____/_____ SERIAL NO.   DEPUTY   PARISH | being absent from the domicile at time of said service. Returned same day No. _____ Deputy Sheriff of _____ |

FILED
2009 JUL 31 P 2: 34

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 09-7986  DIVISION: " E-7 "

ROBIN FENNIDY, WARREN JAMES, ANNA LANCELIN, and BRYAN SIMMS

versus

AMERICAN INTERNATIONAL GROUP, INC., STARR EXCESS LIABILITY INSURANCE COMPANY, LTD., AMERICAN INTERNATIONAL SPECIALTY LINES, CO., GIBRALTAR INSURANCE, CO., and SHAW ENVIRONMENTAL, INC.

FILED: _____  _____
DEPUTY CLERK

## PETITION FOR DAMAGES

THE PETITION of Robin Fennidy, Warren James, Anna Lancelin, and Bryan Simms, persons of full age of majority (hereinafter, "Plaintiffs"), through undersigned counsel, respectfully represent that:

I.

Plaintiffs are residents of and domiciled in the parishes below:

A. Robin Fennidy is a resident of Orleans Parish, State of Louisiana;

B. Warren James is a resident of Orleans Parish, State of Louisiana;

C. Anna Lancelin is a resident of Orleans Parish, State of Louisiana; and

D. Bryan Simms is a resident of Orleans Parish, State of Louisiana.

II.

Made Defendants are:

A. Defendant American International Group, Inc. (hereinafter, "AIG"), is, upon information and belief, a Delaware corporation, with its principle place of business in New York. Further, defendant AIG provided insurance coverage for the risks involved herein of Fleetwood Enterprises, Inc., (hereinafter, "Fleetwood"), which manufactured and supplied FEMA trailers or housing

units as defined below pursuant to contracts with FEMA for use in the State of Louisiana;

B. Defendant American International Specialty Lines Insurance Company (hereinafter, "AISLIC"), is, upon information and belief, a foreign entity, with its principle place of business in a foreign state. Further, defendant AISLIC provided insurance coverage for the risks involved herein of Fleetwood Enterprises, Inc., (hereinafter, "Fleetwood"), which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Louisiana;

C. Defendant Gibraltar Insurance Company, Ltd. (hereinafter, "Gibraltar"), is, upon information and belief, a foreign entity, with its principle place of business in a foreign state. Further, defendant Gibraltar provided insurance coverage for the risks involved herein of Fleetwood Enterprises, Inc., which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Louisiana;

D. Defendant Starr Excess Liability Insurance Company, Ltd., (hereinafter, "Starr"), is, upon information and belief, a Delaware corporation, with its principle place of business in New York. Further, defendant Starr provided insurance coverage for the risks involved herein of Fleetwood, which manufactured and supplied FEMA trailers or housing units as defined below pursuant to contracts with FEMA for use in the State of Louisiana; and

E. Shaw Environmental, Inc., hereinafter, "Shaw", is a corporation organized under the laws of the State of Louisiana with its principle place of business in the State of Louisiana, and is authorized to do and doing business in the State of Louisiana and within the jurisdiction of this Honorable Court.

III.

Venue is proper in Orleans Parish as it is the parish where the plaintiffs' injuries occurred.

IV.

At all pertinent times hereto, Fleetwood Enterprises, Inc., ("Fleetwood") was engaged by the Federal Emergency Management Agency, hereinafter "FEMA", to sell temporary housing units for provision to the Plaintiffs as temporary housing following Hurricanes Katrina and Rita.

V.

Plaintiffs aver that AIG, AISLIC, Gibraltar, and Starr had in full force and effect policies of liability insurance affording coverage to Fleetwood with respect to the matters, risks and things for which this defendant is liable herein, thereby affording plaintiffs the right to proceed against this defendant insurer under the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655.

VI.

On information and belief, Fleetwood expedited production of these housing units, and, on information and belief, resorted to using substandard materials and/or employing irregular practices during the manufacturing process, all of which resulted in the housing units occupied by each Plaintiff containing higher than normal levels of formaldehyde.

VII.

On information and belief, the housing unit of each Plaintiff, including those units which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, deviated from Government specifications pertaining to the safety of the unit as a residence.

VIII.

Plaintiffs submit that each and all of the housing units which are at issue herein, both those which were manufactured prior to the hurricanes and those later manufactured and purchased by FEMA, did not conform to any Government-imposed specifications which addressed the design and/or construction of the housing units pertinent to formaldehyde levels.

IX.

Plaintiffs submit that each of the housing units at issue, both those which were manufactured prior to the hurricanes and those later manufactured, and purchased by FEMA, contained dangerous levels of formaldehyde due to Fleetwood's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, but that Fleetwood failed to warn the Federal Government about these dangers, which initially were not known to the Federal Government.

X.

Plaintiffs submit that Fleetwood ignored, or concealed and/or condoned the concealment of, the fact that each and all of the housing units at issue contained dangerous levels of formaldehyde due to Fleetwood's use of certain materials in their construction, and/or posed the threat of producing dangerous levels of formaldehyde due to the Federal Government's intended use of the housing units as temporary residences for at least 18 months, all in order to sell Fleetwood's products, and/or avoid the costs of safety precautions/inspections, and/or avoid litigation by persons injured by formaldehyde emissions.

XI.

Each and all of the Plaintiffs spent significant time in the FEMA-provided housing units manufactured by Fleetwood and provided to Plaintiffs by the Federal Government. As a result, the Plaintiffs unwittingly were exposed to dangerously high concentrations of the formaldehyde emitted from products used in the manufacture of the subject housing units.

XII.

Fleetwood knew or should have known of the health hazards inherent in the products it constructed, by familiarity with industry standards and published medical studies.

XIII.

At all pertinent times hereto, Shaw was engaged by FEMA through a no-bid contract, with the transportation, installation, site identification and preparation of locations and group sites, preparation of infrastructure to handle the units, inspection of the temporary housing units, maintenance and repair, refurbishment and restoration, and the eventual de-installation and removal of the units.

XIV.

Under the terms of its contract, Shaw was obligated to adhere to all warnings and instructions relating to the temporary housing units as provided and indicated by the manufacturers of same. Further, under their no-bid contracts with FEMA, Shaw was obligated to advise and instruct FEMA regarding the implementation of those contracts. Upon information and belief Shaw failed to properly fulfill either of these tasks.

XV.

Shaw contracted with FEMA to pick-up and transport the temporary housing units from FEMA-controlled staging areas and deliver them to areas which Shaw was tasked with operating. These new areas included staging areas to be managed and maintained as assigned to one of Shaw or individual locations and addresses where Shaw assigned that temporary housing unit would have obligations to manage and maintain it.

XVI.

To accomplish its contractual obligation with FEMA, in addition to the use of subsidiary companies, Shaw entered into numerous sub-contracts, but at all times retained supervisory capacity and responsibility under its individual contract with FEMA.

XVII.

Shaw was tasked under its contract with FEMA to identify and prepare the infrastructure for the various group site locations. This included, amongst other things, ensuring there would

be adequate water, sewage, electricity, etc. Shaw knew or should have known that these preparations were for long-term occupancy of the temporary housing units.

XVIII.

Once the temporary housing units occupied by the plaintiffs were transported and delivered to a particular location, Shaw had the responsibility for installing that temporary housing unit. Shaw installed the temporary housing units by "blocking" the units. This meant raising the plaintiffs' units several feet into the air and off of its wheel base, and setting it on concrete blocks.

XIX.

By blocking the temporary housing units of each plaintiff, Shaw created stress and flexing on the frames of the unit as it were not designed to be lifted off of the wheel base. In fact, the manufacturers of the temporary housing units warned in the various owners' manuals provided with the units, that units should not be jacked so that the vehicle's weight is no longer supported by the wheels.

XX.

The stress and flexing of temporary housing units' frames caused by Shaw "blocking" them with weight off of the wheels created distortion in the travel trailer's shell allowing increased moisture intrusion which contributed to increased formaldehyde exposures.

XXI.

The temporary housing units provided by FEMA were for the most part travel trailers. A travel trailers is, by definition, mobile. They are designed for and intended for periodic, recreational use and not for long-term habitation. By installing the travel trailers on concrete blocks for extended occupancy, Shaw knowingly and intentionally modified the design and the actual use of these units occupied by the plaintiff(s) by converting them into a temporary housing unit to be used as a residence for long term occupancy in some instances exceeding 18 months.

XXII.

Shaw failed to consult with the manufacturers of the temporary housing units, including Fleetwood, with regard to the installation, warnings, warranty issues or advisability of using travel trailers for long term residence and occupation. Shaw took actions which voided the warranties of the manufacturers and directly created or contributed to unsafe and hazardous living conditions in the temporary housing units.

XXIII.

Once Shaw had completed the transportation, delivery and installation of the temporary housing units occupied by the plaintiffs, Shaw was tasked with inspecting each unit to ensure that it was safe and habitable, prior to occupancy by the plaintiffs. Upon information and belief, Shaw failed to adequately inspect the temporary housing units occupied by the plaintiff(s) to ensure that the units were safe and suitable for their intended use – the long-term occupancy by individuals and families displaced by hurricanes Katrina and Rita. This failure to properly inspect the units for unsafe or hazardous conditions directly contributed to the adverse health effects suffered by hurricane victims.

XXIV.

In addition to transportation, site identification, installation and inspection, the temporary housing units occupied by the plaintiffs provided in response to hurricanes Katrina and Rita were also managed, maintained and repaired by Shaw, or their various subcontractors over whom they maintained direct oversight and responsibility. Upon information and belief, Shaw failed to adequately manage, maintain and repair the temporary housing units which enabled and contributed to the unsafe and hazardous conditions that led to adverse health effects amongst the plaintiffs.

XXV.

Parallel to their duty to manage, maintain and repair each temporary housing unit, Shaw failed to undertake appropriate action, maintenance or repair in response to numerous complaints made by the plaintiff-occupant(s) of the temporary housing units to various adverse health effects caused by exposure to elevated levels of formaldehyde.

XXVI.

Following the plaintiffs' occupancy of each temporary housing unit, Shaw was tasked with its de-installation. Upon discovering the deteriorated condition of the temporary housing units at the time of de-installation and removal, Shaw failed to identify the unsuitability of the temporary housing units for long-term occupancy.

XXVII.

In addition to de-installation of the temporary housing units, Shaw was tasked with refurbishment and restoration of the temporary housing units for use, either in direct response to hurricanes Katrina and Rita or for use in the future. By restoring and refurbishing these temporary housing units, Shaw warranted that the units were fit for their intended use, long term occupancy in response to disaster related displacement. By restoring and refurbishing these temporary housing units, Shaw created and perpetuated existing hazardous conditions which would foreseeably lead to adverse health effects caused by the elevated levels of formaldehyde in the temporary housing units.

XXVIII.

Shaw, at every stage of their involvement, failed to warn the plaintiffs of each temporary housing unit of the potential risk of hazardous and unsafe living conditions due to the presence of elevated levels of formaldehyde – a known human carcinogen – which led directly to adverse health effects.

XXIX.

Through its actions and omissions, Shaw created and perpetuated a situation wherein occupants of the temporary housing units were exposed to elevated levels of formaldehyde and, as a result, suffered adverse health effects. Shaw negligently failed to adhere to the manufacturer instructions and warnings related to: (1) the manufacturers' intended (short-term) use of the temporary housing units; (2) the installation and set-up of the temporary housing units; and (3) the warning that the temporary housing units contained urea formaldehyde resin which would release formaldehyde gas directly into the intended living space.

XXX.

Shaw failed to warn the occupants of temporary housing units of the hazardous conditions created by the elevated levels of formaldehyde in the temporary housing units.

XXXI.

By restoring and refurbishing the trailer for future habitation, Shaw improperly and negligently warranted that the units were fit for the intended use of long-term occupancy.

XXXII.

As a result of the foregoing, Plaintiffs were caused to sustain injuries including, but not limited to, past and future physical injuries, past and future mental and physical pain and suffering, past and future physical impairments and disability, past and future reasonable and necessary medical expenses, past and future loss of earning capacity, past and future loss of enjoyment and quality of life and other damages, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter during the period of displacement from a natural disaster, as well as, all general, special, incidental and consequential damages as shall be proven.

XXXIII.

Plaintiffs' injuries and resulting damages were proximately caused by the fault of Defendants and their officers, agents, employees, and those for whom they are legally responsible.

XXXIV.

Fleetwood under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiffs for all injuries and damages for designing, manufacturing, distributing and/or selling of temporary housing units described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

XXXV.

Furthermore, Shaw, under all applicable laws, including but not limited to, the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, is strictly liable unto Plaintiffs for all

9

injuries and damages for designing, manufacturing, constructing, assembling, distributing, and/or refurbishing of the residential housing as described above, that were defective, unsafe, and unreasonably dangerous in design, composition, manufacture, and/or construction and/or due to its lack of and/or inadequate warnings and due to its non-conformity to the express warranties of fitness of said product.

XXXVI.

Plaintiffs assert their claims against both AIG, AISLIC, Gibraltar, Starr and Shaw under the laws of the State of Louisiana and under any other state and federal statutes which may be applicable.

XXXVII.

Plaintiffs are entitled to a trial by jury.

WHEREFORE, Plaintiffs pray that AIG, AISLIC, Gibraltar, Starr, and Shaw Environmental, Inc., be served with a copy of this Petition for Damages and that after due proceedings are had, Plaintiffs pray for judgment in their favor and against Defendant AIG, AISLIC, Gibraltar, and Starr as the insurers of Fleetwood and Shaw, in an amount reasonable under the premises, together with legal interest thereon from the date of judicial demand, and for all costs of these proceedings, and for all appropriate legal and equitable relief, and for trial by jury.

Respectfully submitted:

FEMA TRAILER FORMALDEHYDE
PRODUCT LIABILITY LITIGATION

BY: *Justin I. Woods*
GERALD E. MEUNIER, #9471
JUSTIN I. WOODS, #24713
**PLAINTIFFS' CO-LIAISON COUNSEL**
Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.
2800 Energy Centre, 1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:   504/522-2304
Facsimile:    504/528-9973
gmeunier@gainsben.com

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

10

COURT-APPOINTED PLAINTIFFS'
STEERING COMMITTEE
ANTHONY BUZBEE, Texas # 24001820
ROBERT BECNEL, #14072
RAUL BENCOMO, #2932
FRANK D'AMICO, #17519
MATT MORELAND, #24567
LINDA NELSON, #9938
DENNIS REICH, Texas #16739600
MIKAL WATTS, Texas # 20981820

**PLEASE SERVE:**

Shaw Environmental, Inc.
Through its Agent for Service of Process
CT Corporation
5615 Corporate Blvd.
Suite 400B
Baton Rouge, LA 70808

**PLEASE HOLD SERVICE ON:**

American International Group, Inc.
Through the Secretary of State
State of Louisiana
8585 Archives Avenue
Baton Rouge, Louisiana 70809

Starr Excess Liability Insurance Company, Ltd.
Through its CEO
175 Water Street, 19th Floor
New York, NY 10038

American International Specialty Lines Insurance Co.
Through the Secretary of State
State of Louisiana
8585 Archives Avenue
Baton Rouge, Louisiana 70809

Gibraltar Insurance Company, Ltd.
Through its Registered Agent for Service
Quest Management Solutions

11

FB Perry Building
40 Church Street
Hamilton, HM 11
Bermuda